

ROLEX WATCH USA INC

MICHEL CO

JRL   5/9/97   14:41
3:96-CV-00805
*118*
*MEMOPNO.*

FILED

MAY - 8 1997

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROLEX WATCH, U.S.,A., INC., a
corporation,

                     Plaintiff,

    vs.

MICHEL CO., a business, and MICHA
MOTTALE, an individual,

                    Defendant.

CASE NO. 96-CV-805 H (POR)

**MEMORANDUM DECISION**

    This case came to trial on December 10, 1996, and the evidence concluded on January 10, 1997. John Summer, Brian Brokate, Beth Frenchman, David Kane and Siegrun Kane appeared for the plaintiff Rolex Watch, U.S.A., Inc. Defendants Michel Co. and Micha Mottale appeared by Charles Goldberg and Janice Brown. After the trial, the parties supplied post-trial briefing to the court on the issues litigated in the trial. Plaintiffs have also filed a motion for judgment on partial findings under Federal Rule of Civil Procedure Section 52(c). Each side has done an excellent job of presenting the case to the court. The court has considered all of the briefs, the evidence at trial, and the law in coming to its decision on the case.

## BACKGROUND

    This is an action for trademark counterfeiting and trademark infringement in violation of 15 U.S.C. § 1114; for use of false designations of origin and false description in violation of 15 U.S.C. § 1125; federal trademark dilution in violation of 15 U.S.C. § 1125 (c); unfair competition in violation

of California Business and Professions Code § 17203 and state trademark dilution in violation of California Business and Professions Code § 14330.

Plaintiff Rolex Watch U.S.A., Inc. is a New York corporation having an office and principal place of business at 665 Fifth Avenue, New York, New York, 10022. Defendant Michel Co. is a sole proprietorship operating, doing business under the laws of the State of California, and having an office and principal place of business at 2350 El Cajon Blvd., San Diego, California, 92104. Defendant Micha Mottale is an individual who is in charge of and operates the business of Michel Co.

Federal jurisdiction and venue are proper upon the grounds that this court has subject matter jurisdiction over the claims in the action which relate to trademark counterfeiting, trademark infringement, use of false designations of origin and false descriptions, and federal trademark dilution pursuant to provisions of provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

At trial, Plaintiff called as witnesses Richard Wieder of Nautilus Investigations, a private investigator, Karen Scott of Nautilus Investigations, a private investigator, Jack Smalley of the Tontine Group, a private investigator, Erich Lorenz of Rolex Watch USA, an assistant vice-president; Micha Mottale, the defendant, and professor J. Thomas McCarthy. The defense called Vahid Moradi, the defendant Micha Mottale, Thomas A. Gielow, a diamond setter, and Nam Van Do, a watch repairman.

Plaintiff is the exclusive distributor of Rolex watches in the United States. Defendant is in the wholesale jewelry business, selling to dealers and some retail jewelers. As a part of his business, Defendant Mottale is a distributor of luxury used watches and watch accessories including watch bands and bezels. A percentage of the business consists of used Rolex watches and watch accessories. Defendant Mottale buys approximately 200 to 300 used Rolex watches per year and refurbishes them for resale. Defendants' watch business includes reconditioning, customizing, and sale of used luxury watches including Rolex watches. Defendants sell bezels, dials, and replacement bracelets that do not originate with Rolex for use on Rolex watches.

/ / / /

/ / / /

/ / / /

/ / / /

Rolex watches are sold under a number of trademarks including Rolex, President, Crown Device, Datejust, Day-Date, Oyster, Oyster perpetual, GMT-Master, Cosmograph, Submariner and Explorer as follows:

| MARK | REG. DATE | REG. NO. |
|---|---|---|
| ROLEX | 1/12/15 | 101,819 |
| PRESIDENT | 1/24/50 | 520,309 |
| CROWN DEVICE | 1/28/58 | 657,756 |
| DATEJUST | 2/17/59 | 674,177 |
| DAY-DATE | 7/4/67 | 831,652 |
| OYSTER | 3/6/28 | 239,383 |
| OYSTER PERPETUAL | 11/7/78 | 1,105,602 |
| GMT-MASTER | 8/11/59 | 683,249 |
| COSMOGRAPH | 6/19/62 | 733,081 |
| SUBMARINER | 7/20/93 | 1,782,604 |

The registrations have become incontestable, except for Submariner, under 15 U.S.C. § 1065. Rolex does not have a trademark on the design of the watch band or design of the bezel.

Rolex spends in excess of fifteen million dollars a year and devotes substantial effort and resources to advertise and promote its Rolex watches. Rolex watches are known by the purchasing public as watches of the highest quality. There is no dispute about the strength of the name Rolex and the Crown design trademark. Defendants' witness Vahid Moradi, a jeweler, testified that Rolex watches are probably the most popular watch in the world, are very fine quality, and have a high resale value.

Rolex distributes new Rolex watches only through official Rolex jewelers. Rolex and official Rolex jewelers service Rolex watches. Rolex watches have a warranty from Rolex U.S.A. for a period of one year from the date of purchase from an official Rolex jeweler. The addition of non-Rolex parts on a Rolex watch voids the warranty. In addition, Rolex will not service Rolex watches which have been modified with non-Rolex parts. Rolex sells genuine replacement parts for Rolex watches only to official Rolex jewelers and Rolex parts accounts.

96cv0805

1   Plaintiff concedes that Defendants may sell used Rolex watches. Plaintiff has alleged that
2   Defendants have engaged in the distribution and sale of counterfeit watch bracelets and counterfeit
3   watches falsely bearing copies of one or more of the Rolex trademarks. In addition, Plaintiff alleges that
4   Defendants use in connection with the sale of genuine Rolex watches, watch parts which are not
5   manufactured by Rolex. Plaintiff alleges that the manufacture, distribution and placement of those parts
6   on used Rolex watches may affect the quality of the Rolex watch. Plaintiff alleges that the sale of such
7   watch parts or watches is likely to cause consumer confusion because the replacement parts are not
8   engraved as non-Rolex parts.

9       A Rolex watch consists of the watch case containing the watch movement, the dial, the bezel
10  consisting of a circular piece that surrounds the crystal and seals the watch in the front, the bracelet or
11  band, and the clasp which closes the bracelet. The Rolex marks consist of the name Rolex and the
12  distinctive crown. The Rolex trademarks appear on genuine Rolex dials and clasps. A separate mark
13  does not appear on the watch band or on the bezel.

14      Defendants sold at least two completely counterfeit Rolex Daytona watches bearing Rolex
15  trademarks at a trade show in Orlando, Florida in February 1996 and at least one counterfeit ladies gold
16  Rolex bracelet bearing Rolex trademarks at a trade show in Miami, Florida in January 1996. Rolex's
17  investigator, Richard Wieder, observed on January 4, 1996 at the International Watch and Jewelry Guild
18  ("IWJG") show in Miami Defendants displaying and offering for sale two Rolex 18k gold watch
19  bracelets and one 18k gold Rolex Daytona watch. On January 5, 1996 Defendants sold to Richard
20  Wieder what defendant described as a new Italian band for $925. (Exhibit #2). Defendants gave Mr.
21  Wieder the receipt for this purchase which describes his purchase of an "Italian band." Erich Lorenz,
22  the Assistant Vice President for Rolex U.S.A., examined the watch and determined it to be completely
23  counterfeit bearing counterfeit copies of the Rolex and Crown device trademarks.

24      On February 11, 1996, Karen Scott, plaintiff's investigator purchased from defendants at the
25  IWJG show in Orlando, Florida a counterfeit gold Rolex Daytona watch for $2,500 (Exhibit #4). Ms.
26  Scott did not receive a receipt for this purchase nor was she told that the watch was being sold for scrap.
27  At the same time, Ms. Scott observed defendants sell another Rolex Daytona watch to Mr. Hursey for
28  $2,500. Erich Lorenz examined the 18k gold Daytona watch purchased by Karen Scott and determined

1  that the watch is counterfeit. The dial, winding crown, and clasp all bear copies of the Rolex and Crown

2  device trademarks. He also examined the watch purchased by Mr. Hursey in front of Karen Scott and

3  determined that the watch is also completely counterfeit. (Exhibit #35).

4  　　　Defendants have a substantial volume of watch sales. Defendants gross receipts were

5  $1,500,000 for 1993, $2,231,581 for 1994, and $2,812,172 for 1995. Luxury watches were

6  approximately 40% to 50% of Defendants' gross revenues in 1995. Of the luxury watches sold by

7  Defendants in 1995, approximately 10% to 20 % are Rolex watches. Approximately 5% to 10% of

8  Defendants' watch sales in 1995 consists of non-Rolex accessories for Rolex watches such as dials and

9  bezels. Defendants' sales records show invoices totaling at least $645,517 that refer to Rolex watches.

10  However, Defendants are in the business of selling used Rolex watches, and Plaintiff concedes that

11  Defendant is not prohibited under the law from selling used Rolex watches. Defendants' sales records

12  show invoices totaling at least $197,050 that refer to Rolex watches identified by the Rolex trademarks

13  "President", "GMT", or "Explorer." Defendants have sold approximately 100 replacement watch bands

14  since 1993. Defendants refer to the watch bands as "Italian" watch bands. These are 18k gold watch

15  bands that are made to fit Rolex watches, but are not genuine Rolex bands. The dollar totals of

16  watchband sales referred to in Defendants' sales records amount to at least $475,368.02. Defendants'

17  sales records show sales of at least $79,275 in dials. However, Defendants also sell dials for other

18  luxury watches such as Piaget or Cartier. Defendants' sales records show sales of $62,122 in bezels.

19  **DISCUSSION**

20  　　A.　　Trademark Counterfeiting and Infringement.

21  　　　Plaintiff alleges violations of the Lanham Act,[1] claiming trademark counterfeiting and trademark

22  infringement under 15 U.S.C. § 1114. Section 1114 prohibits the use of "any reproduction, counterfeit,

23  copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

24  distribution, or advertising of any goods or services on or in connection with which such use is likely

25  to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The purpose of the

26  

27  　　　[1] Plaintiff also brings a claim under the state unfair competition act, CAL. BUS. & PROF. CODE § 17200, et seq.
California unfair competition claims are substantially congruent to Lanham Act claims, and therefore, to the extent the court

28  finds that Plaintiff has demonstrated or failed to demonstrate a Lanham Act claim, the court finds that Plaintiff has
demonstrated or failed to demonstrate its state unfair competition claim. See Cleary v. News Corp., 30 F.3d 1255, 1262-63
(9th Cir. 1994).

1 Lanham Act "is to prevent consumer confusion or deception about the origin or make of a product."
2 Parfums Givenchy, Inc. v. Drug Emporium, Inc., 38 F.3d 477, 484 (9th Cir. 1994), cert. denied, 115 S.
3 Ct. 1315 (1995); see also 15 U.S.C. § 1127 ("intent of this chapter is . . . to prevent fraud and deception
4 in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered
5 marks").

6        To establish a violation of section 1114, Plaintiff must prove: (1) Defendants used a counterfeit
7 or reproduction, copy, or colorable imitation of a registered mark, and (2) such use is likely to confuse
8 or deceive. The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or
9 substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. In addition, "[w]hen an
10 original mark is attached to a product in such a way as to deceive the public, the product itself becomes
11 a 'counterfeit' just as it would if an imitation of the mark were attached." Westinghouse Electric Corp.
12 v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 900 (9th Cir. 1997).

13        In determining likely confusion, courts consider a number of factors including the strength of
14 plaintiff's mark, similarity in marks and products, channels of distribution, type of goods, purchasers'
15 evidence of actual confusion, and defendant's intent. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-
16 49 (9th Cir. 1979); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993). The
17 determination of likelihood of confusion in counterfeit cases may go beyond the immediate purchaser.
18 Courts have held that confusion to the public at large is a relevant consideration under the Lanham Act.
19 See, e.g., U.S. v. Hon, 904 F.2d 803, 806-08 (2d Cir. 1990), cert. denied, 498 U.S. 1069 (1991); Rolex
20 Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 492-93 (S.D. Fla. 1986); see also 3 J. THOMAS
21 MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:15 (1997) (confusion and
22 mistake can occur among other persons than the immediate buyer at a future time). The Ninth Circuit
23 has also found confusion to future purchasers to be a relevant consideration in ordinary infringement
24 cases. See Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980).
25 / / / /
26 / / / /
27 / / / /
28 / / / /

1       1.      *Sale of Complete Counterfeits.*[2]

2           Defendants have used counterfeits of Rolex marks, the Rolex and Crown device, on the dial and

3   winding crown in connection with the sale of at least two completely counterfeit watches in violation

4   of 15 U.S.C. sections 1114 and 1127. (Exhibit #4, #35). In addition, Defendants have used counterfeits

5   of Rolex marks, the Rolex Crown device, on the bracelet clasp in connection with the sale of at least one

6   completely counterfeit lady's gold bracelet. (Exhibit #2). Having considered the relevant facts, the court

7   finds that Plaintiff has satisfactorily shown the likelihood of confusion of the use of these counterfeit

8   marks on the two completely counterfeit watches and one completely counterfeit bracelet.

9       2.      *Sale of Altered or Converted Watches.*

10          Plaintiff claims that the sale of altered or converted Rolex watches which contain non-Rolex

11  bezels, dials, and bracelets are counterfeit and infringe upon Plaintiff's trademark. Defendants

12  strenuously argue that the sale of such watches does not constitute counterfeiting nor trademark

13  infringement.

14          Having carefully considered the relevant authorities and the arguments presented by counsel, the

15  court finds that Defendants' sale of these altered watches infringes upon Plaintiff's trademark, and that

16  such infringing use is counterfeit in the absence of adequate disclosure that the altered watches contained

17  non-Rolex parts. The only identifying marks on the altered watch are the Rolex trademarks. The non-

18  Rolex parts which are added do not have any identifying mark, nor is there any marking on the watch

19  which identifies it as used, reconditioned, or altered. The use of the Rolex trademarks in conjunction

20  with the sale of non-Rolex parts is deceptive and misleading as to the origin of the non-Rolex parts.

21  Moreover, because the marks used are original Rolex trademarks, such use constitutes counterfeit use.

22  Westinghouse, 106 F.3d at 899-900; see 15 U.S.C. § 1127 (defining counterfeit mark as a mark identical

23  with a registered mark). Finally, having considered all of the evidence, the court finds that under the

24  broader considerations of confusion in counterfeit cases, Defendants' use of the trademarks in

25  connection with the sale of the non-Rolex parts would likely confuse subsequent or second-hand

26

27

28      [2] In this memorandum decision, the court uses the term "completely" or "wholly" counterfeit to refer to items which originate in no way from Rolex. As noted above, a product may become counterfeit although it contains some original or genuine parts if an original mark is used in a deceptive manner. See Westinghouse, 106 F.3d at 900.

1 purchasers, as well as persons observing the product.[3] There is a likelihood of confusion because of the

2 strength of the Rolex trademarks and the use of the original trademarks to identify the product.

3      The court recognizes that it is not unlawful to sell a repaired or reconditioned product. However,

4 such a product must be clearly and distinctively sold as such, rather than as new. See Champion Spark

5 Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S. Ct. 1136, 1139 (1947). In Champion, the changes

6 involved were limited to reconditioning in order to restored the plugs, as far as possible, to their original

7 condition. Id. at 129, 67 S. Ct. at 1139. Under these circumstances, the Court affirmed the court of

8 appeals and determined that stamping on the product a distinctly visible marking in contrasting color

9 stating "repaired" or "used" was sufficient to avoid likely confusion. At issue in the present case,

10 however, is not the mere recondition or sale of used products, but rather, the sale of watches that have

11 been altered by the addition of accessories and/or replacement of certain parts. Moreover, unlike the

12 sparkplugs in Champion, the watches sold by Defendants do not bear a distinctly visible marking stating

13 that the watch is used, reconditioned, repaired, or altered.

14      The Ninth Circuit's recent opinion in Westinghouse is particularly applicable to the present case,

15 and has given guidance to the court since the time of the trial. In Westinghouse, the defendants sold

16 reconditioned circuit breakers that were cleaned and sometimes had internal components replaced. Id.

17 at 897. The defendants left the original labels with the plaintiff's trademark attached to the circuit

18 breakers, or if they were faded, replaced them with labels obtained from the plaintiff or copies of the

19 original labels. Id. The labels did not identify that the product was reconditioned. Id. The Ninth Circuit

20 held that the misuse or unauthorized use of the original trademark constitutes trademark counterfeiting.

21 Id. at 900.

22      In the present case, Defendants sell their altered watches with the original Rolex trademarks

23 marking the watch. When Defendants add non-Rolex parts to a Rolex watch, the use of the same,

24 original Rolex trademarks misleads and deceives as to the origin of these non-Rolex parts because there

25 is no disclosure on the watch that non-Rolex parts have been added.

26      Defendants attempt to distinguish Westinghouse by arguing that circuit breakers do not have any

27 parts which are not integral to the circuit breaker, whereas Defendants simply replace non-integral

28

---

[3] The court has found a likelihood of confusion, and therefore, Defendants' Rule 52(c) motion is denied.

accessories. Whether a part is an integral part of the product is generally more relevant to the degree of infringement and the appropriate remedy than to the simple question of infringement. For example, in Bulova Watch Co. v. Allerton Co., 328 F.2d 20, 23-24 (7th Cir. 1964), the court of appeals reversed a portion of the remedy granted by the trial court which allowed the defendants to retain the plaintiff's trademark. In Bulova, the defendants purchased Bulova watches and placed the Bulova movements, which retained the Bulova trademark on the dial, into new watch cases of their own design. Id. at 21. The defendants' use of the Bulova trademark in advertising and on the watch dial was found to infringe upon the plaintiff's mark. Id. at 22. In addition, the trial court found, and the court of appeals agreed, that the watch case is a necessary and integral part of the complete product and that its replacement results in a different product which is no longer a Bulova watch. Id. at 23. The injunctive relief awarded by the trial court required the defendants to remove the Bulova trademark from the dial or add the word "movement." Id. at 22. The court of appeals reversed and held that even the addition of "movement" to the dial was insufficient in that case.

The Bulova Court relied in part on Champion, supra. In Champion, the Supreme Court commented on the significance of the integral or basic nature of a part: "Cases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added." Id. at 129, 67 S. Ct. at 1138. Thus, it is apparent that the integral or basic nature of a part is not an element required for trademark infringement. A party infringes upon a mark if it uses the mark in a deceptive or misleading way. Under some circumstances, the misleading or deceptive nature may be cured by the addition of descriptive words such as "used" or "repaired," but the use of the mark in some manner is still permissible. In other circumstances, the changes have been so fundamental or basic that any use of the mark would be misleading.

Defendants have also argued that there is nothing impermissible with the exact copying of products or designs in the public domain. The court recognizes that, absent false representations or palming off, it is not unlawful to sell copies of unpatented products or replacement parts. Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 700 (1st Cir. 1987). Further, the holder of a trademark is not entitled to monopolize the market for an unpatented product. See Smith v. Chanel, Inc., 402 F.2d

562, 568 (9th Cir. 1968). Defendants in this case, however, do more than merely sell replacement parts for non-patented Rolex parts. Defendants "recondition" and "customize" used Rolex watches by replacing bezels, dials, and bracelets, and the replacement parts do not bear any identifying mark. The altered watch still retains the Rolex trademarks, and therefore, Defendants are using the trademarks in connection with the sale of the non-Rolex parts. It is of no matter that the trademarks may be the original trademarks. Westinghouse, 106 F.3d at 899-900. Thus, although it may be permissible for Defendants to separately sell exact duplicates of replacement parts, Defendants may not sell such parts in conjunction with a mark that is used in a deceptive or misleading manner.

Finally, the court notes Defendants' argument that if a watch becomes counterfeit because of the replacement of Rolex parts by non-Rolex parts, this would give manufacturers a monopoly over the entire replacement part market. Defendants analogize to car radios and argue that a consumer would be guilty of counterfeiting if it replaced the factory-installed radio with a product manufactured by another party. This analogy, however, is not entirely persuasive because a radio manufactured by another party will bear that party's trademark, and thus, such replacement would not be likely to confuse the consumer. Furthermore, such analogies are not entirely apposite because they say nothing as to what disclosures could be made under those circumstances. In the present case, Defendants' altered watches bear the original Rolex trademarks and do not identify or disclose the nature of the non-Rolex parts. Defendants may add an independent permanent mark to the non-Rolex parts to sell the altered watches. Without an independent mark, Defendants' sale of altered watches which contain non-Rolex bezels, dials, and/or bands, constitutes trademark counterfeit and infringement.

3.    *Sale of Non-Rolex Accessories.*

Plaintiff also claims that the separate sales of non-Rolex dials, bezels, and bracelets violate the Lanham Act. As noted above, the sale of non-Rolex replacement parts does not violate the law, so long as they do not bear any Rolex trademark in a likely confusing manner or any confusingly similar mark.

Defendants' replacement diamond bezel does not bear a Rolex trademark, nor does it bear any mark confusingly similar to a Rolex trademark. Therefore, Defendants may continue to separately sell their diamond bezels. Similarly, Defendants may sell replacement watch bands or bracelets so long as they do not bear a Rolex trademark or a confusingly similar mark. The court finds, however, that

Defendants have used imitation "crowns" on their replacement watch bands. The sample bracelet purchased by the Rolex investigator on November 19, 1996 bears such a mark. The court finds that the overall impression created by Defendants' imitation crown is likely to cause confusion among prospective purchasers who carry an imperfect recollection of the Rolex crown. See Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980). Therefore, Defendants may not sell replacement bands bearing the imitation crown, but may continue to sell bands with other clasps, such as the half moon clasp.

Defendants sell three different types of dials: used original dials, customized dials which have had diamonds added, and refinished dials. The sale of used original dials which have not been altered in any manner is permissible. Defendants' refinished dials, however, still bear the Rolex and Crown device trademark. The refinishing process involves removal of the Rolex trademarks, hands, and markers, putting on a new finish or layer of stone, and replacing the Rolex trademarks, hands, and markers.[4] The court finds that the refinishing constitutes a significant change or alteration to the dial. The use of the original trademarks is misleading and deceptive as to the nature of the refinished dials and will likely cause confusion. Therefore, the sale of the refinished dials with nothing more than the original Rolex trademarks violates the Lanham Act in the absence of adequate disclosure that the watch is reconditioned.

Defendants' custom dials also constitute a significant change to the original dial. The addition of diamonds to the dial involves the drilling of holes and setting of diamonds. Like the sale of circuit breakers in Westinghouse, the sale of the custom diamond dials bearing only the original Rolex trademarks is deceptive and misleading as to the nature and origin of the custom dials and will likely cause confusion. Therefore, the sale of the custom dials also violates the Lanham Act.

B.     Contributory Infringement.

Plaintiff claims that Mottale's sale of replacement parts violates the Lanham Act under the doctrine of contributory infringement. A manufacturer or distributor who "intentionally induces another to infringe a trademark, or . . .continues to supply its product to one whom it knows or has reason to

_____

[4] Defendants do not refinish the dials, but either purchase refinished dials or send them to others for refinishing upon the request of customers.

1 know is engaging in trademark infringement" may be liable for contributory infringement. Inwood
2 Laboratories, Inc. v. Ives Laboratories, Inc. 456 U.S. 844, 854, 102 S. Ct. 2182, 2188 (1982); see also
3 Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996). After hearing the testimony
4 of the witnesses and evaluating the credibility of the testimony, the court declines to find contributory
5 infringement as to Defendants' sales of replacement watch bands, stand alone bezels, and reconditioned
6 dials. Although the replacement parts are designed to only fit Rolex watches, there is insufficient
7 evidence of intent to induce or knowledge of infringement. Further, Defendants had no notice that
8 Plaintiff considered such conduct to be infringing. The court has some concern that the replacement
9 parts sold by Defendants could be used by others to infringe upon Plaintiff's marks. Nevertheless, the
10 court finds that Plaintiff has failed to demonstrate that Defendants, through the sales of its replacement
11 parts, either intentionally induces infringement or knowingly supplies to another who engages in
12 trademark infringement.

13       C.    False Designation of Origin and False Description.

14       To prove a claim of false designation under 15 U.S.C. § 1125(a), the plaintiff must prove
15 defendant: (1) used a designation or false designation of origin; (2) in interstate commerce; (3) in
16 connection with goods or services; (4) such use is likely to cause confusion, mistake, or deception; and
17 (5) such use has or is likely to damage the plaintiff. 15 U.S.C. § 1125(a); Summit Tech., Inc. v. High-
18 Line Medical Instruments, Co., 933 F. Supp. 918, 928 (C.D. Cal. 1996). Having carefully considered
19 the evidence, the court finds that Plaintiff has failed to prove their claim for false designation of origin.
20 Primarily, Plaintiff has failed to sufficiently demonstrate that Defendants' use of the Rolex trademarks
21 has, or is likely to damage, plaintiff. First, the parties have acknowledged that the age of the watches
22 sold by Defendants are more than likely to be beyond the one-year warranty offered on new watches by
23 Rolex. Thus, if any consumer presented such watches to Rolex for service, the warranty would be
24 expired. Second, if the consumer were to discover that the watch contained non-Rolex parts, then the
25 existence of such parts would not be attributed to Rolex, but to the party from whom the consumer
26 purchased the watch. Therefore, the court finds that Plaintiff has simply failed to demonstrate the
27 damage caused or likely to be caused by the false designation.
28 / / / /

1    D.    Dilution of Trademark.

2         Plaintiff asserts a claim for trademark dilution under 15 U.S.C. § 1125(c).[5]  To prove a claim of

3    trademark dilution, the plaintiff must prove that: (1) the mark is famous; (2) the defendant's use of the

4    allegedly diluting mark was after the plaintiff's mark achieved fame; and (3) the defendant's use caused

5    dilution of the distinctive quality of the plaintiff's mark.  11 U.S.C. § 1125(c); Star Markets, Ltd. v.

6    Texaco, Inc., 950 F. Supp. 1030, 1032 (D. Haw. 1996).  For much the same reason as in Plaintiff's false

7    designation claim, the court finds that Plaintiff has failed to sufficiently demonstrate dilution of the

8    Rolex trademarks.  Plaintiff only offers a one-year warranty on its new watches.  The parties recognize

9    that the watches sold by Defendants are likely to be much beyond the original warranty, and any

10   deterioration in function is likely to be attributed to the age of the watch.  Further, if a consumer

11   discovers that the malfunction is due to non-Rolex replacement parts, then such malfunction will be

12   attributed not to Rolex, but to some third-party.  Indeed, the evidence indicates that jewelry stores often

13   sell the used watches under a store warranty.  The court finds that under the totality of the evidence,

14   *Plaintiff has failed to make a sufficient showing of dilution to its trademark.*

15   E.    Remedy - Permanent Injunction

16         In granting permanent injunctive relief, the court notes the following considerations.  As

17   to Defendants' sale of altered watches which bear only the original Rolex trademarks, the court has

18   found that such use constitutes trademark counterfeiting and infringement.  However, the court also finds

19   that these replacement parts are not so extensive, basic, or integral to the watch such that their

20   replacement results in a different product.  See Bulova Watch Co., 328 F.2d at 23.  The court finds that

21   it would not be a misnomer to use the Rolex name or trademarks on the altered watches, cf. Champion

22   Spark Plug Co., 331 U.S. at 129, 67 S. Ct. at 1138, and thus, the court will allow Defendants to continue

23   to sell their altered watches with the original Rolex trademarks under certain circumstances as discussed

24   below.

25   ////

26   _____

27        [5] Plaintiff also brings a claim for dilution under the state statute, CAL. BUS. & PROF. CODE §14330.  The California
     dilution statute is substantially similar to the federal statute, and for the purposes of this case, the analysis is the same for both.

28   See Panavision Int'l, L.P. v. Toeppen, 945 F. Supp. 1296, 1301 n.1 (C.D. Cal. 1996).  Because the court finds that Plaintiff
     has failed to sufficiently demonstrate its federal dilution claim, the court finds that Plaintiff fails to sufficiently demonstrate
     a dilution claim under California law as well.

The non-Rolex replacement parts do not bear any marking which identify its source as being non-Rolex. Therefore, Defendants may not sell any altered Rolex watch which contains non-Rolex dials, bezels, and/or bands that do not have an independent mark of their origin. For example, Defendants may sell a Rolex watch which has a non-Rolex replacement bezel if the bezel itself bears an engraved mark on its outside edge, such as "Michel Co." or the company from which Defendants obtain the bezels. Defendants may also sell a Rolex watch which has a refinished or custom diamond dial if it bears a mark such as "Michel Co. Dial" or the company from which Defendants obtain the dials. Furthermore, Defendants may sell a Rolex watch that has a non-Rolex band or bracelet if the bracelet bears a sticker or engraving identifying the band as non-Rolex. Similarly, Defendants' sale of refinished or custom diamond dials, because they bear the original Rolex trademarks, may not be sold if the dial is not identified as non-Rolex. For example, the custom diamond dial may bear the original trademarks, but it must also bear another mark such as "Michel Co. Dial" or the company from which the dials are obtained. The court thus finds that the addition of these identifying marks on the replacement parts will eliminate the likelihood of confusion to consumers and others who observe the altered watch which still bears the original trademarks.

In sum, having fully considered the requested and suggested injunctive relief in light of the totality of circumstances of the case, the court grants in part and denies in part the requested injunctive relief. The court issues the following permanent injunctive relief:

1. Defendants may not use the marks Rolex, President, Crown Device, Datejust, GMT-Master, Daydate Oyster, Oyster Perpetual, Cosmograph, Explorer, Explorer II and/or Submariner or any reproduction, counterfeit, copy or colorable imitation of the marks in connection with the advertising, offering for sale, or sale of non-genuine Rolex watches;

2. Defendants may not offer for sale or sell altered Rolex watches which contain non-Rolex bezels, dials, or bracelets that do not have an independent, permanent mark on the replacement part which identifies the source of the non-Rolex part as non-Rolex;

////

////

- 14 -

3.  If Defendants offer for sale or sell altered Rolex watches in compliance with paragraph 2 of this permanent injunctive relief, Defendants must use the following disclosure on tags, invoices, promotions, and advertising:

> This watch contains non-Rolex parts which are not supplied by an official Rolex jeweler.  The addition of non-Rolex parts voids the Rolex warranty.  Rolex Watch, U.S.A., Inc. may no longer service a watch containing non-Rolex parts.

4.  Defendants must affix stickers to any used Rolex watches stating in visible and legible print that the watch is pre-owned and not reconditioned by an official Rolex jeweler;

5.  Defendants may not sell genuine Rolex clasps bearing any Rolex trademark with non-Rolex replacement bracelets or bands;

6.  Defendants may not use a trapezoidal clasp on any non-Rolex watch band;

7.  Defendants may not offer for sale or sell any replacement watch band or bezel without a disclaimer by a hang tag or sticker that identifies the part as a non-Rolex part; however, any replacement band or bezel sold attached to a watch must have an independent, permanent mark on the part identifying the part as non-Rolex;

8.  Defendants must use the following disclosures as to non-Rolex replacement parts in visible and legible print:

a. On tags:

> This is not an original Rolex part.  It is not supplied by an official Rolex jeweler.  The addition of non-Rolex parts voids the Rolex warranty.  Rolex Watch U.S.A., Inc. may no longer service a watch containing non-Rolex parts.  Do Not Remove this Tag Prior to Sale to Consumer.

b. On invoices:

> This is not an original Rolex part.  It is not supplied by an official Rolex jeweler.  The addition of non-Rolex parts voids the Rolex warranty.  Rolex Watch U.S.A., Inc. may no longer service a watch containing non-Rolex parts.

////

////

96cv0805

1    *c. On promotions and advertising:*

2            This is not an original Rolex part. It is not supplied by an official Rolex jeweler.

3            The addition of non-Rolex parts voids the Rolex warranty. Rolex Watch U.S.A.,

4            Inc. may no longer service a watch containing non-Rolex parts.

5    F.    <u>Remedy - Damages</u>

6        1.    Monetary Relief

7            A. Trebel damages for counterfeit products.

8    Plaintiff also seeks damages against defendants. The Trademark Counterfeiting Act of 1984

9    provides for mandatory civil remedies of treble damages or profits (whichever is greater) and attorneys'

10   fees, absent a finding of extenuating circumstances. 15 U.S.C. § 1117. To qualify for the mandatory

11   award, Plaintiff must show that: (1) Defendant was intentionally dealing in the goods; and (2) Defendant

12   knew that the goods were counterfeit. 15 U.S.C. § 1117. "[I]t is essential that the trial courts carefully

13   fashion remedies which will take all the economic incentive out of trademark infringement." <u>Playboy</u>

14   <u>Enterprises, Inc. v. Baccarat Clothing Co.</u>, 692 F.2d 1272, 1275 (9th Cir. 1982). The Lanham Act also

15   provides for an award of damages and profits which may be trebled in the case of ordinary infringement.

16   15 U.S.C. § 1117(a), (b). For an award of profits, plaintiff need not show actual damages. <u>Lindy Pen</u>

17   <u>Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1410-11 (9th Cir.), <u>cert. denied</u>, 510 U.S. 815 (1993). Plaintiff

18   must show that Defendants were unjustly enriched and engaged in deliberate infringement. In

19   calculating profits, Plaintiff must prove Defendants' sales. Defendants must prove any deductions and

20   any portion of the profit not attributable to the infringing use. <u>Mishawaka Rubber & Woolen Mfg. Co.</u>

21   <u>v. S.S. Kresge Co.</u>, 316 U.S. 203, 205-06, 62 S. Ct. 1022, 1024 (1942).

22   At trial, Mr. Mottale admitted that he knows that a counterfeit Rolex is a watch "not made by

23   Rolex . . . that bears their trademarks." (Mottale Tr. II p. 75). Mr. Mottale knew that the two gold Rolex

24   Daytona watches were counterfeits when he bought them. He knew that it was wrong to sell the

25   counterfeit Daytona watches. He also knew that the lady's watchband that he sold was counterfeit

26   because he described it on the invoice as "It" which was an abbreviation for "Italian." He used the word

27   "Italian" to describe something that does not originate with Rolex. Defendants sold the two counterfeit

28   Daytona watches for $5,000 and the counterfeit bracelet for $925. The court rejects Defendants'

1  argument that because he did not make a profit on the sales, the court should not treble the award. The

2  court concludes that Defendants intentionally sold the counterfeit products. Accordingly, the court

3  awards $5,925 trebled to $17,775.

## B. No lost profits

5  Plaintiff also seeks an award of Defendants' sales of Rolex watches, claiming an award of profits

6  as monetary relief from allegedly infringing products. Generally, recovery of monetary relief requires

7  proof of willful infringement. Lindy Pen Co., 982 F.2d at 1405. Even if the plaintiff establishes

8  willfulness, an award of profits is not automatic; recovery is proper only when consistent with the

9  principles of equity. 15 U.S.C. § 1117; Faberge, Inc. v. Saxony Products, Inc., 605 F.2d 426, 429 (9th

10  Cir. 1979); Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 917-18 (Fed. Cir. 1984).

11  To recover profits, Plaintiff must prove the amount of Defendants' income from sales of the

12  infringing product. Mishawaka Rubber & Woolen Mfg. Co., 316 U.S. at 205-06, 62 S. Ct. at 1024.

13  Beyond the proof of the three counterfeit items, Plaintiff has failed to show a nexus between Defendants'

14  sales of legitimate accessories and infringing items. The court has rejected Plaintiff's claim that the

15  watch bracelets and bezels are infringing products. Mr. Mottale testified that he does not know if the

16  invoices offered by Plaintiff represent Defendants' sale of Rolex products or Cartier, Piaget or other

17  watch makes, and if so, whether the product sold was an entirely genuine Rolex watch or a genuine

18  Rolex watch containing custom parts. While Plaintiff points to testimony that about 30% of the

19  reconditioned watches that he sells are watches to which non-Rolex parts have been added, Plaintiff has

20  not demonstrated to the court's satisfaction what percentage of defendants' sales are attributable to

21  infringing products.

22  Furthermore, the court concludes that there were genuine disputes concerning the extent to which

23  trademark law prohibits the sale of accessory parts. The court has granted in part but also denied in part

24  Plaintiff's requested injunctive relief. Under the totality of the circumstances and considering the

25  equities involved, the court declines to issue a monetary award of profits. Consequently, the court denies

26  Plaintiff's request for a monetary award of profits.

27  / / / /

28  / / / /

96cv0805

1                           C. Attorneys fees and costs

2         Plaintiff also seeks an award of attorneys' fees. Reasonable attorneys' fees must be awarded if

3 defendants knew that the goods were counterfeit and intended to offer them for sale, unless the court

4 finds "extenuating circumstances." 15 U.S.C. § 1117(b). Where the defendant's sale of counterfeit

5 goods is deliberate, it is an abuse of discretion for the trial court not to award attorneys' fees. Playboy

6 Enterprises, Inc., 692 F.2d at 1276. After closely examining the evidence at trial and the law, the court

7 concludes that an award of attorneys fees for the completely counterfeit items is appropriate. The court

8 further concludes that the lawsuit and request for preliminary injunctive relief assisted in preventing

9 further sales of counterfeit items by Defendants. Therefore, the court will permit plaintiffs to make an

10 application for attorneys fees related to this counterfeit portion of the case. In doing so, the court expects

11 Plaintiff to exclude those fees related to the portions of the case not dealing with the three wholly

12 counterfeit items and the request for preliminary injunction.

13         The court is aware that under 15 U.S.C. § 1117(a), the court may award reasonable attorneys'

14 fees in trademark infringement cases in "exceptional cases." An "exceptional case" is where the

15 infringement is malicious, fraudulent, deliberate or willful. Committee for Idaho's High Desert, Inc. v.

16 Yost, 92 F.3d 814, 825 (9th Cir. 1996); Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir.

17 1993); Lindy Pen Co., 982 F.2d at 1409.

18         Other than the initial counterfeit portion of the case, the major dispute between the parties

19 concerns whether Defendants may sell custom accessories for Plaintiff's product. The court has agreed

20 in part with Defendants that they are permitted to sell watch bracelets and bezels. The court has also

21 agreed in part with Plaintiff that the refinished and custom dials need to include a more complete

22 disclosure to the customer. Under all the circumstances, the court declines to find this an exceptional

23 case of malicious, fraudulent, deliberate or willful infringement except for that portion relating to the

24 three completely counterfeit items. Accordingly, the court will consider a limited award of attorneys'

25 fees attributable to the part of the case involving the three completely counterfeit items. The parties are

26 directed to meet with the magistrate judge assigned to the case to resolve the

27 / / / /

28 / / / /

1 reasonableness of the attorneys' fees or, absent agreement, a report and recommendation on the
2 reasonable award of attorneys' fees consistent with this decision. In addition, Plaintiff is awarded costs
3 of suit.

### CONCLUSION

5      Having carefully considered the totality of evidence and applicable authorities, the court finds
6 that Defendants' sale of completely counterfeit watches and altered, genuine Rolex watches infringes
7 upon Plaintiff's trademarks. Defendants' sale of non-Rolex replacement parts also infringe upon
8 Plaintiff's trademarks in part. Rolex has demonstrated that Defendants have engaged in acts which
9 constitute willful trademark counterfeiting, warranting permanent injunctive relief, treble damages in
10 the sum of $17,775, and reasonable attorneys' fees and costs. Other than the completely counterfeit
11 items, Rolex has demonstrated to a limited extent that Defendants have engaged in trademark
12 infringement, but not willful infringement. The court declines to find that this is an exceptional case of
13 trademark infringement beyond the completely counterfeit items. Finally, Defendants' Rule 52(c)
14 motion is denied.

15      IT IS SO ORDERED.

16 DATED: 5|8|97

17

                    MARILYN L. HUFF, JUDGE
18                     UNITED STATES DISTRICT COURT

```
1   COPIES TO:

2   JOHN P SUMNER
    11440 WEST BERNARDO COURT SUITE 300
3   SAN DIEGO CA 92127

4   BRIAN BROKATE
    BETH M FRENCHMAN
5   GIBNEY ANTHONY & FLAHERTY
    665 FIFTH AVENUE
6   NEW YORK NY 10022

7   DAVID H T KANE
    SIEGRUN KANE
8   KANE DALSIMER SULLIVAN KURUCZ
        LEVY EISELE & RICHARD
9   711 THIRD AVENUE
    NEW YORK NY 10017
10
    CHARLES GOLDBERG
11  JANICE BROWN
    SELTZER CAPLAN WILKINS & MCMAHON
12  750 B STREET SUITE 2100
    SAN DIEGO CA 92101
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```